UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER JACKSON,<br><br>  Plaintiff,<br><br>  v.<br><br>ALVARO TRAQUINA, et al.,<br><br>  Defendants. | No. 2:13-cv-0781 KJN P<br><br><br>ORDER |

Plaintiff is a former state prisoner proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Plaintiff's amended complaint is now before the court.[1]

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

---

[1] Plaintiff also filed a second motion to proceed in forma pauperis. (ECF No. 10.) Plaintiff was granted leave to proceed in forma pauperis (ECF No. 8) and no further motions are required.

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Plaintiff names three individuals as defendants: Dr. Alvaro Traquina, Chief Medical Officer, R.N. M. de la Vega, and Dr. Ashley Pfle. Plaintiff alleges that in 2009, after he was incarcerated, he "got in contact with" Dr. Traquina "to let him know that [plaintiff] was going blind." (ECF No. 9 at 2.) Plaintiff claims that Dr. Traquina "did nothing to help" plaintiff or "get back" to plaintiff. He claims that R.N. de la Vega "was there when 'she' finally got in touch with [plaintiff] and 2010 when [plaintiff] was going blind in [his] left eye." (ECF No. 9 at 3.) Plaintiff alleges that Dr. Pfle started seeing plaintiff after he became blind, and "tried to somewhat not help [plaintiff]. She act[ed] like she really did not want to help or give [plaintiff] any stronger eye drops for [his] eyes." (Id.) Plaintiff includes no other factual allegations, but provided 95 pages of exhibits.

////

////

2

1   The Civil Rights Act under which this action was filed provides as follows:

2   > Every person who, under color of [state law] . . . subjects, or causes
3   > to be subjected, any citizen of the United States . . . to the
4   > deprivation of any rights, privileges, or immunities secured by the
    > Constitution . . . shall be liable to the party injured in an action at
    > law, suit in equity, or other proper proceeding for redress.

5   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the
6   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See
7   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983
8   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no
9   affirmative link between the incidents of police misconduct and the adoption of any plan or policy
10  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another
11  to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an
12  affirmative act, participates in another's affirmative acts or omits to perform an act which he is
13  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,
14  588 F.2d 740, 743 (9th Cir. 1978).

15  Moreover, supervisory personnel are generally not liable under § 1983 for the actions of
16  their employees under a theory of respondeat superior and, therefore, when a named defendant
17  holds a supervisorial position, the causal link between him and the claimed constitutional
18  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)
19  (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d
20  438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.
21  denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of
22  official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673
23  F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal
24  participation is insufficient).

25  "[D]eliberate indifference to serious medical needs of prisoners constitutes the
26  unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."  Estelle v.
27  Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks
28  omitted).  Plaintiff must show "deliberate indifference" to his "serious medical needs," id. at 104,

3

1  which includes "both an objective standard -- that the deprivation was serious enough to
2  constitute cruel and unusual punishment -- and a subjective standard -- deliberate indifference."
3  Snow v. McDaniel, 681 F.3d 978, 982 (9th Cir. 2012), overruled in part on other grounds by
4  Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc)..

5  To meet the objective element, plaintiff must demonstrate the existence of a serious
6  medical need. Estelle, 429 U.S. at 104. Such need exists if the failure to treat the injury or
7  condition "could result in further significant injury" or cause "the unnecessary and wanton
8  infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotes and
9  citations omitted). Serious medical needs include "[t]he existence of an injury that a reasonable
10 doctor or patient would find important and worthy of comment or treatment; the presence of a
11 medical condition that significantly affects an individual's daily activities; [and] the existence of
12 chronic and substantial pain." McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992),
13 overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

14 Under the subjective element, a prison official is deliberately indifferent only if the
15 official "knows of and disregards an excessive risk to inmate health and safety." Toguchi v.
16 Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotes and citation omitted). To prevail on
17 a claim for deliberate indifference, a prisoner must demonstrate that the prison official "kn[ew] of
18 and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of
19 the facts from which the inference could be drawn that a substantial risk of serious harm exists,
20 and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate
21 indifference "may appear when prison officials deny, delay or intentionally interfere with medical
22 treatment, or it may be shown by the way in which prison physicians provide medical care."
23 Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). The court "need not defer to the
24 judgment of prison doctors or administrators" when deciding the deliberate indifference element.
25 Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989).

26 In applying this standard, the Ninth Circuit has held that before it can be said that a
27 prisoner's civil rights have been abridged, "the indifference to his medical needs must be
28 substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

4

cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.)  A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow, 681 F.3d at 988 (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances.)

Review of plaintiff's exhibits reveals that plaintiff suffers from glaucoma, and at the time he was prescribed Timolol Maleate eye drops. (ECF No. 9 at 8.)  The January 21, 2011 first level appeal response states that plaintiff claimed he was six to eight months overdue for an appointment with an eye doctor, and that plaintiff was taking eye drops even though it seemed like it was making his eyes worse, but the doctor told plaintiff that if he did not use the eye drops, plaintiff could go blind.  (ECF No. 9 at 19.)  The appeal response indicates that plaintiff was interviewed by defendant R.N. de la Vega, who confirmed that plaintiff has a history of glaucoma and had a current prescription for Timolol Maleate eye drops.  She noted that plaintiff was last seen by Dr. Ulandy, ophthalmologist on September 2, 2009, with a follow-up appointment to be scheduled in three months, but which had not occurred by January 21, 2011.  R.N. de la Vega

1  scheduled plaintiff for an appointment with the ophthalmologist the last week of January 2011.
2  (ECF No. 9 at 20.)  The second level appeal response reflected that plaintiff was seen by the
3  ophthalmologist on February 9, 2011, and plaintiff's eye drops were current and recently
4  renewed.  (ECF No. 9 at 28.)  On October 24, 2011, plaintiff's eye examination revealed
5  intraocular eye pressures were within normal limits.  (ECF No. 9 at 33.)  At the Director's Level
6  of Review, submitted on June 13, 2011, plaintiff claimed he was still dissatisfied because he was
7  told that eye laser treatment would help the glaucoma, but plaintiff wasn't receiving the laser
8  treatment, and plaintiff's eye was getting no better; plaintiff was still 90% blind in his left eye.
9  (ECF No. 9 at 25.)  The director denied the appeal, noting that plaintiff had active orders for
10 glaucoma medications, saw the ophthalmologist on February 9, 2011, and the eye exam on
11 October 24, 2011, revealed intraocular pressures within normal limits.  (ECF No. 9 at 25.)

12        Despite these appeal decisions, plaintiff provided a copy of a physician request for
13 services, dated October 24, 2011, in which the physician diagnosed plaintiff with advanced
14 glaucoma and cataracts, and requested urgent cataract and glaucoma surgery.  (ECF No. 9 at 52.)
15 The medical necessity entry notes increased intraocular pressure ("IOP") in both eyes, and states
16 that plaintiff "needs urgent glaucoma surgery."  (ECF No. 9 at 52.)  The request appears to have
17 been approved on October 24, 2011.  (ECF No. 9 at 52.)

18        However, the form is also marked "refused."  (ECF No. 9 at 52.)

19        The November 8, 2011 report by Dr. Rusheed notes that plaintiff "will go blind with IOP
20 at this level.  Will not have surgery under any circumstances."  (ECF No. 9 at 53.)  Dr. Rusheed
21 noted that plaintiff "refused surgery again."  (ECF No. 9 at 53.)[2]  Plaintiff's refusal to have
22 surgery was again noted on December 8, 2011.  (ECF No. 9 at 54.)

23        The allegations in plaintiff's amended complaint are vague and conclusory.  It does not
24 appear from the exhibits that Dr. Traquina was in charge of plaintiff's medical care, and plaintiff

---

[2] On March 21, 2011, plaintiff was seen by his primary care provider.  (ECF No. 9 at 57.) Plaintiff's main concern was his "significant glaucoma that is followed by Dr. Crosson," and asked to have a second opinion regarding surgical repair of his left eye.  The provider noted:  "We have a long discussion regarding medical vs. surgical tx [treatment] and he agrees to go along with Dr. Crosson's plan."  (ECF No. 9 at 57.)

6

1  does not indicate how he "let Dr. Traquina know" about plaintiff's medical condition.  Absent
2  additional facts, it appears plaintiff named Dr. Traquina as a defendant solely based on his
3  supervisorial role as Chief Medical Officer.  As noted above, this is insufficient to state a
4  cognizable civil rights claim.

5  Moreover, the documents provided by plaintiff demonstrate that he was consistently
6  prescribed eye drops to treat his glaucoma.  If plaintiff believes that he should have been provided
7  different or stronger eye drops, such belief constitutes a difference of opinion rather than
8  deliberate indifference.  In addition, the doctor's notes confirm that plaintiff would go blind
9  without surgical intervention, which plaintiff apparently refused.

10  Thus, it is unclear whether plaintiff can amend his complaint to state a cognizable claim of
11  deliberate indifference.  However, in an abundance of caution, plaintiff will be granted another
12  opportunity to amend.

13  The court finds the allegations in plaintiff's amended complaint so vague and conclusory
14  that it is unable to determine whether the current action is frivolous or fails to state a claim for
15  relief.  The court has determined that the amended complaint does not contain a short and plain
16  statement as required by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible
17  pleading policy, a complaint must give fair notice and state the elements of the claim plainly and
18  succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must
19  allege with at least some degree of particularity overt acts which defendants engaged in that
20  support plaintiff's claim.  Id.  Because plaintiff has failed to comply with the requirements of Fed.
21  R. Civ. P. 8(a)(2), the amended complaint must be dismissed.  The court will, however, grant
22  leave to file a second amended complaint.

23  If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how
24  the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or
25  statutory rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the second amended
26  complaint must allege in specific terms how each named defendant is involved.  There can be no
27  liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a
28  defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v.

Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. Plaintiff should file his second amended complaint on the form provided by the court.

Plaintiff is advised that no further exhibits are required. The exhibits filed by plaintiff are now part of the court record and may be referenced by any party.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint is dismissed;

2. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; plaintiff must file an original and two copies of the second amended complaint; failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed; and

3. The Clerk of the Court shall send plaintiff the form for filing a civil rights complaint.

Dated: August 22, 2014

/jack0381.14amd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE