1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WALTER JACKSON,                          No.  2:13-cv-0781 KJN P

12                 Plaintiff,

13        v.                                   ORDER

14   ALVARO TRAQUINA, et al.,

15                 Defendants.

16

17        Plaintiff is a former state prisoner, proceeding in forma pauperis and without counsel in

18   this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff has agreed to the jurisdiction

19   of the undersigned magistrate judge for all purposes.  See 28 U.S.C. § 636(c); Local Rule 305(a).

20   (See ECF No. 4.)  Plaintiff's Second Amended Complaint is now before the court.

21        The court is required to screen complaints brought by prisoners seeking relief against a

22   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

23   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

24   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

25   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

26        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

27   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

28   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

1    indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

2    490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

3    pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

4    Cir. 1989); Franklin, 745 F.2d at 1227.

5         A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

6    which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

7    support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467

8    U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt

9    Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under

10   this standard, the court must accept as true the allegations of the complaint in question, Hospital

11   Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light

12   most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v.

13   McKeithen, 395 U.S. 411, 421 (1969).

14        Plaintiff's original complaint was dismissed with leave to amend due to several

15   inadequacies in the pleading.  (See ECF No. 8.)  Significantly, for present purposes, that

16   complaint makes clear that plaintiff commenced this action while incarcerated at California State

17   Prison Corcoran (CSP-COR), challenging the medical care he received during his incarceration at

18   California State Prison Solano (CSP-SOL), from "June 30, 2009 till June 27, 2011."[1]  (ECF No. 1

19   at 35.)

20        Plaintiff filed a First Amended Complaint on July 2, 2014, which was dismissed with

21   leave to amend for failure to state a clearly cognizable claim.  (See ECF No. 11.)  In the instant

22   Second Amended Complaint, plaintiff alleges in full only the following (ECF No. 12 at 3-4) (sic):

> On 9/2009 I went to see a eye doctor.  I was told that I had
> Glaucoma in my left eye and would be seen in 60 days.  I wrote to
> Dr. Alvaro because my eye was getting worse.  In Dec. I got no
> response.  I also wrote to Dr. Asley to see if she could help me.  No

---

[1] Review of the "Inmate Locator" website operated by the California Department of Corrections
and Rehabilitation (CDCR) indicates that plaintiff was admitted to CDCR on November 27, 2007.
See http://inmatelocator.cdcr.ca.gov/search.aspx.  See Fed. R. Evid. 201 (court may take judicial
notice of facts that are capable of accurate determination by sources whose accuracy cannot
reasonably be questioned).

response at all.  So I 602 the medical department.  I didn't see no one until 2/9/2011.  That's when I seen Dr. Crossman and he told me that I was 90% blind in my left eye and there was no help to save it.  All he could do is try to save my right eye.  He told me that I should have been seen a long time ago.  The eye drops that was giving to me was not strong enough so he gave me some.  M. De la Vega was there when all this took place.

I want the courts to make them responsible for what they have done to me.  Because if they would have done they job I would not 90% blind for the rest of my life.  I also want the courts to award me my lawsuit.

The allegations of the instant Second Amended Complaint lack requisite specificity as to the identity of the named defendants and the charging allegations against them.  Essentially, the complaint alleges that an eye doctor informed plaintiff in September 2009 that he had glaucoma in his left eye and should be seen within 60 days.  Plaintiff alleges that his eye got worse and he informed defendant Chief Medical Officer Traquina ("Dr. Alvaro") in writing, but received no response.  In December 2009, plaintiff wrote to defendant Dr. Pfile ("Dr. Asley") to see if she could help, but received no response.  Plaintiff's allegation that "M. de la Vega was there when all this took place" appears intended to reflect de la Vega's role as appeals coordinator, reviewing plaintiff's relevant administrative grievances.  Notwithstanding the cursory nature of these allegations, a liberal construction of these allegations in tandem with the allegations of plaintiff's original complaint and the exhibits attached to his First Amended Complaint indicates that plaintiff is attempting to state a potentially cognizable claim against these defendants premised on their alleged deliberate indifference to plaintiff's serious medical needs from 2009 to 2011.  Plaintiff's exhibits support the potentially cognizable nature of his deliberate indifference claims.

Plaintiff states that he filed a "602" (administrative grievance).  The exhibits to his First Amended Complaint include two potentially relevant grievances, both filed a year after plaintiff allegedly wrote to defendants Traquina and Pfile.  Plaintiff submitted one grievance on December 21, 2010, wherein he stated that he had an eye disease and was almost blind in one eye; that he was scheduled for surgery but "told by the Doctor that it is about six months overdue;" that "[a]t this point I'm being denied the proper medical attention and the pain has caused me blurred vision and headaches. . . . I would like to see a doctor or someone that can tell me when will I

3

1   receive the proper medical attention." (Sic) (ECF No. 9 at 97-8 (Log No. SOL-24-10-14429).)

2   On January 18, 2011, plaintiff was interviewed by defendant M. de la Vega, R.N., who noted in

3   her First Level Response that plaintiff was "*last seen on September 2, 2009 by Dr. Ulandy,*

4   *Ophthalmologist, and [was] scheduled for a follow-up appointment in three months. This*

5   *appointment has not occurred. I have scheduled you for an appointment with our contract*

6   *Ophthalmologist in the last week of this month.*" (ECF No. 9 at 21-2 (Log No. SOL-24-10-

7   14429) (emphasis added).)

8       Plaintiff submitted a second grievance on December 29, 2010. (ECF No. 9 at 17, 95-6

9   (Log No. SOL-24-11-10013).) He stated therein that the glaucoma in his left eye was getting

10  worse, despite using the prescribed eye drops, and that he was 6 to 8 months overdue in seeing an

11  eye doctor. Plaintiff stated he didn't "know what to do no more," and asked to see an eye doctor

12  as soon as possible to prevent blindness in his left eye. (Id.) On January 21, 2011, plaintiff was

13  interviewed by defendant M. de la Vega, R.N., who reiterated in her First Level Response that

14  plaintiff was "*last seen on September 2, 2009 by Dr. Ulandy, Ophthalmologist, and [was]*

15  *scheduled for a follow-up appointment in three months. This appointment has not occurred. I*

16  *have scheduled you for an appointment with our contract Ophthalmologist in the last week of this*

17  *month.*" (ECF No. 9 at 18-9, and 25-6 (Log No. SOL-24-11-10013) (emphasis added).)

18      A Second Level Response was issued on March 11, 2011, in Log No. SOL-24-11-10013,

19  under the authority of J. Aultman, Supervising R.N. (signed by someone else). The response

20  noted that plaintiff was seen by an ophthalmologist on February 9, 2011; the assessment of that

21  doctor is not provided. The response states only that plaintiff's prescriptions for eye drops were

22  current and recently renewed, and "these medications will be available for pick up Monday,

23  March 14, 2011." (ECF No. 9 at 27-8, 30-1.)

24      A Director's Level Decision was issued in Log No. SOL-24-11-10013 on November 18,

25  2011, denying the grievance. (ECF No. 9 at 35-6; see also id. at 33, 37.) Plaintiff's concerns

26  were framed as follows: "[Y]ou felt like were you were going blind; and you were overdue for

27  seeing an eye doctor. You requested the following: To see an eye doctor as soon as possible."

28  (Id. at 36.) While acknowledging that plaintiff did not receive the ophthalmology follow-up that

1  was recommended in 2009, the appeal was denied because plaintiff was seen by an

2  ophthalmologist on February 9, 2011, and had active orders for glaucoma medications.  (Id. at

3  35.)

4    Plaintiff's exhibits do not appear to demonstrate the exhaustion of his other related

5  administrative grievance (Log No. SOL-24-10-14429).  However, plaintiff filed other grievances,

6  e.g. challenging the reversal of a decision authorizing plaintiff to wear a vest identifying him as

7  vision impaired.  (See, e.g., ECF No. 9 at 38-9, 86-94.)  Moreover, plaintiff's asserted "refusal" to

8  have surgery on his affected eye in 2011 appears to potentially reflect a complex decision matrix.

9  Plaintiff alleges that he was informed in February 2011 by ophthalmologist Dr. Crossman that he

10  was 90% blind in his left eye and there was no available treatment.  March 21, 2011 progress

11  notes of plaintiff's primary care physician reflect that plaintiff's "main concern is he has

12  significant glaucoma that is followed by Dr. Crosson, however he asks to have a second opinion

13  regarding surgical repair of his L eye.  We have a long discussion regarding medical vs. surgical

14  tx and he agrees to go along with Dr. Crosson's plan."  (ECF No. 9 at 57, 67.)  On July 14, 2011,

15  a medical services request sought a "routine" follow-up consultation with an ophthalmologist,

16  which was conducted on October 17, 2011, and concluded with a recommendation for surgery.

17  (Id. at 45, 48.)  An urgent request for surgery, dated October 24, 2011, several months after Dr.

18  Crossman apparently informed plaintiff that there was no effective treatment, was designated

19  "refused."  (Id. at 52.)

20    Further, although the date of plaintiff's transfer from CSP-SOL to CSP-COR is not clear,

21  the record reflects a formal decision that CSP-SOL could not adequately provide for plaintiff's

22  medical needs.  At plaintiff's May 10, 2011 classification meeting, at CSP-SOL, it was

23  determined that "[w]ith the blind/vision impairment, I/M Jackson requires placement in another

24  institution that can better accommodate his needs.  Therefore this UCC recommends referring this

25  case to the CSR for transfer to SAFT-II was Alt CMF-III with MED Override due to his DPV

26  status.  It should be noted that I/M Jackson prefers going to CMF-III due to his family living in

27  the area."  (Id. at 16, 59.)  On June 28, 2011, plaintiff requested a transfer to California Medical

28  Facility.  (Id. at 18.)  However, plaintiff was transferred to CSP-COR.

1   Despite the above analysis of plaintiff's claims, when viewing all of his filings together,

2   plaintiff has not yet filed a complaint that clearly states cognizable claims against the named

3   defendants, and specifies in what way each defendant was allegedly deliberately indifferent.

4   Plaintiff will be accorded one last opportunity to file an amended complaint, subject to the

5   following constraints.  In addition, plaintiff will be provided a copy of his original complaint

6   (improperly directed to the Solano County Superior Court),[2] and copies of his exhibits (which

7   must be culled and organized in support of a further amended complaint), to assist plaintiff in the

8   preparation of a Third Amended Complaint.

9   Plaintiff is informed that, to state a claim under the Eighth Amendment's proscription

10  against deliberate indifference to a prisoner's serious medical needs,[3] he must allege not only that

11  his medical needs are serious, but that each defendant's response or course of treatment was

12  "medically unacceptable under the circumstances," and chosen "in conscious disregard of an

---

[2]  Plaintiff is informed that the last page of his original complaint, the state court "Exemplary Damages Attachment," is inapplicable to the instant federal action; plaintiff should include his request for damages in his concluding claim for relief set forth in his Third Amended Complaint.

[3]  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104).  Serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain."  McGuckin, 974 F.2d at 1059-60.

To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

1    excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

2    (citations and internal quotation marks omitted).  Plaintiff must allege specifically how he was

3    harmed by each defendant's alleged purposeful act or failure to act in response to plaintiff's

4    serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "The indifference to a

5    prisoner's medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical

6    malpractice' will not support this claim.  Even gross negligence is insufficient to establish

7    deliberate indifference to serious medical needs." Lemire v. CDCR, 726 F.3d 1062, 1081-82 (9th

8    Cir. 2013) (internal citations, punctuation and quotation marks omitted); accord, Cano v. Taylor,

9    739 F.3d 1214, 1217 (9th Cir. 2014).  Moreover, "[a] difference of opinion between a physician

10   and the prisoner -- or between medical professionals -- concerning what medical care is

11   appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987

12   (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

13        Plaintiff is further informed that a defendant's participation in the administrative review of

14   an inmate appeal does not, in itself, give rise to a cause of action. See, e.g., Mann v. Adams, 855

15   F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 89 (1988) (no constitutional right to an

16   inmate appeal or grievance process).[4]  On the other hand, prison officials in administrative

17   positions may be "liable for deliberate indifference when they knowingly fail to respond to an

18   inmate's requests for help." Jett, supra, 439 F.3d at 1098 (citing Estelle v. Gamble, 429 U.S. 97,

19   104 (1976); and Greeno v. Daley, 414 F.3d 645, 652-53 (7th Cir. 2005).  "A supervisor may be

20   liable for an Eighth Amendment violation if he or she was made aware of the problem and failed

21   to act or if he or she promulgated or enforced a policy under which unconstitutional practices

22   occurred." Valley v. Director of Prisons,  2008 WL 436954, *5 (E.D. Cal. 2008) (citing Jett, 439

23   F.3d at 1098; and Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)); see also  Horn v. Hornbeak,

24

_____

25   [4] Accord, Lewis v. Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal. 2008) (dismissing corrections
     officials who denied plaintiff's appeals because "participation in the prison grievance process
26   does not give rise to a cause of action"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)
     (prison official's involvement in administrative appeals process cannot serve as a basis for
27   liability in a Section1983 action); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)
     (prison "grievance procedure is a procedural right only, it does not confer any substantive right
28   upon the inmates").

1   2010 WL 1267363 (E.D. Cal. 2010) (medical supervisors).  Hence, plaintiff can state a

2   cognizable claim against the currently named supervisory medical defendants only if he can

3   persuasively allege that one or more of them knowingly disregarded plaintiff's serious medical

4   needs, by conduct (or failure to act) that represents more than negligence.

5         The complaint must allege in specific terms how each named defendant allegedly violated

6   plaintiff's constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no

7   liability under Section 1983 unless there is some affirmative link or connection between a

8   defendant's actions and the claimed deprivation.  Id.; May v. Enomoto, 633 F.2d 164, 167 (9th

9   Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory

10  allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of

11  Regents, 673 F.2d 266, 268 (9th Cir. 1982).

12        Finally, Local Rule 220 requires that an amended complaint be complete in itself without

13  reference to any prior pleading.  An amended complaint supersedes the original complaint.  See

14  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Therefore, in an amended complaint, each claim

15  and the involvement of each defendant must be sufficiently alleged.

16        In accordance with the above, IT IS HEREBY ORDERED that:

17        1.  Plaintiff's Second Amended Complaint (ECF No. 12) is dismissed with leave to

18  amend.

19        2.  Within thirty days after the filing date of this order, plaintiff shall complete the

20  attached Notice of Amendment and submit the following documents to the court:

21              a.  The completed Notice of Amendment; and

22              b.  An original and one copy of plaintiff's proposed Third Amended Complaint.

23  The Third Amended Complaint must bear the docket number assigned to this case, be labeled

24  "Third Amended Complaint,"  and comply with the requirements of the Civil Rights Act, the

25  Federal Rules of Civil Procedure, and the Local Rules of Practice.

26        3.  Failure of plaintiff to timely file a Third Amended Complaint in accordance with this

27  order will result in the dismissal of this action.

28  ////

4.  The Clerk of Court is directed to send plaintiff the following:

a.  A copy of this order;

b.  A blank form used in this district for filing a prisoner civil rights complaint;

c.  One copy each of plaintiff's prior complaints  (ECF Nos. 1, 9 and 12).

Dated:  November 17, 2014

jack0781.SAC.lta

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

9

1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WALTER JACKSON,                                No.  2:13-cv-0781 KJN P

12                    Plaintiff,

13           v.                                     NOTICE OF AMENDMENT

14   ALVARO TRAQUINA, et al.,

15                    Defendants.

16   _____

17           Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19

20               _____                   Third Amended Complaint (and exhibits)

21

22

23   _____          _____
     Date                                          Plaintiff
24

25

26

27

28
                                                   1